**00-6068**

**CIV LENARD**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**MAGISTRATE JUDGE TURNOFF**

|  |  |
|---|---|
| NUTRITION 21, ) | |
| ) | |
| Plaintiff, ) | Case No. _____ - CIV- _____ |
| ) | |
| v. ) | Magistrate Judge _____ |
| ) | |
| FARMANATURAL, INC., ) | **MEMORANDUM OF LAW IN** |
| ) | **SUPPORT OF PLAINTIFF'S MOTION** |
| Defendant. ) | **FOR PRELIMINARY INJUNCTION** |
| ) | |

Nutrition 21 hereby submits this Memorandum of Points and Authorities in support of its motion for a preliminary injunction against defendant Farmanatural, Inc. ("Farmanatural").

## I. PRELIMINARY STATEMENT

Farmanatural sells the metal picolinate complex "chromium picolinate" and/or sells compositions containing chromium picolinate. Chromium picolinate sold for human or animal consumption has no use other than in a composition covered by one or more of the claims of U.S. Patent No. Re. 33,988 ("the '988 patent") (Exhibit A hereto). The '988 patent is owned by the United States of America as represented by the Secretary of Agriculture (the "United

States"). Nutrition 21 is the exclusive licensee under the '988 patent for chromium picolinate pursuant to a license agreement with the United States dated January 12, 1987 and amended January 7, 1993 (Exhibit B hereto). Farmanatural's sales of chromium picolinate and/or compositions containing chromium picolinate are for human or animal consumption. Such sales therefore constitute either contributory infringement or direct infringement of the '988 patent.

## II. STATEMENT OF FACTS

The '988 patent issued on July 7, 1992 and is entitled "Dietary Supplementation With Essential Metal Picolinates". The United States of America, as represented by the Secretary of Agriculture, is the owner of the '988 patent. The patent was assigned to the United States by the inventor, Gary W. Evans (See Exhibit A).

Nutrition 21 is the exclusive licensee under the '988 patent for claims of the patent covering chromium picolinate. Nutrition 21 is authorized by the United States to bring this action for patent infringement.

Nutrition 21 is in the business of developing, producing and marketing nutrition products and dietary supplements. Among the products sold by Nutrition 21 is chromium picolinate. Except for experimental uses in the field of nutrition, chromium picolinate is not used other than as a nutritional supplement to provide essential metals as described in claim 12 of the '988 patent (See Declaration of Jonathan de la Harpe, PhD, ¶3 submitted herewith).

Claim 12 of the '988 patent is an independent claim, and claim 13 is dependent on claim 12. Claim 12 of the '988 patent provides as follows:

> A food composition for selectively supplementing an essential metal selected from the group consisting of iron, chromium, copper, cobalt, and manganese in a mammalian diet and for facilitating absorption of said metals by the mammalian

2

system comprising a food composition containing an effective amount of at least one exogenously synthesized essential metal picolinate complex characterized by the following structural formula:

$$\left[ \bigcirc_{N}^{COO^-} \right]_n M^{+n}$$

wherein M represents the cation of said metal and n is equal to the cation's valence.

Claim 13 of the '988 patent provides as follows.

The composition as described in claim 12 wherein said essential metal picolinate complex is chromium picolinate.

Farmanatural sells chromium picolinate and/or compositions containing chromium picolinate. While the sale of chromium picolinate itself is not an act of infringement, such sales do constitute contributory infringement and inducement to commit infringement, since chromium picolinate has no uses for human or animal consumption other than as compositions covered by claims 12 and 13 of the '988 patent (de la Harpe Decl., ¶3). Thus, those who purchase chromium picolinate, and then make, use or sell a product containing chromium picolinate, directly infringe claims 12 and 13 of the '988 patent.

Nutrition 21 places the patent number on its product price list, thereby notifying the public that its sale of chromium picolinate is protect by the '988 patent. Accordingly, Farmanatural is on notice of the '988 patent and its infringement thereof.

### III. ARGUMENT

**A.    Legal Standards**

Injunctive relief in patent cases is authorized by 35 U.S.C. §283. Preliminary injunctions in patent cases are controlled by the law of the Federal Circuit, rather than by the regional

circuit, since they involve substantive issues unique to patent law. <u>Hybritech Inc. v. Abbot Laboratories</u>, 849 F.2d 1446, 1451 n. 2 (Fed. Cir. 1988).

In order to obtain a preliminary injunction in a patent infringement action, the moving party must establish: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if injunctive relief is not granted; (3) the balance of hardships tips in its favor; and (4) the impact of the injunction on the public interest. <u>Bell & Howell Document Management v. Altek Systems</u>, 132 F.3d 701, 705 (Fed. Cir. 1997); <u>Polymer Technologies Inc. v. Bridwell</u>, 103 F.3d 970, 973 (Fed. Cir. 1996); <u>Hybritech</u>, 849 F.2d at 1451.

In order to demonstrate a likelihood of success, the moving party must show that, in light of the presumptions and burdens that will inhere at trial, it will likely prove infringement of the patent, and that it will likely withstand any alleged challenge to the validity and enforceability of the patent. <u>Bell & Howell</u>, 132 F.3d at 705; <u>New England Braiding Co. v. A.W. Chesterton Co.</u>, 970 F.2d 878, 882-83 (Fed. Cir. 1992). Further, if the moving party clearly establishes a likelihood of success, it is entitled to a presumption that it would be irreparably harmed if a preliminary injunction were not to issue. <u>Bell & Howell</u>, 132 F.3d at 705; <u>Polymer Techs</u>, 103 F.3d at 973.

**B.   Nutrition 21 Can Show a Likelihood of Success on The Merits**

  **1.   Patent Infringement**

35 U.S.C. §271(a) provides that whoever, without authority, makes, uses, offers to sell or sells any patented invention within the United States, or imports into the United States any patented invention, during the term of the patent therefor, infringes the patent. Additionally, 35 U.S.C. §271(b) provides that whoever actively induces infringement of a patent shall be liable as

an infringer. Finally, 35 U.S.C. §271(c) provides that whoever offers to sell or sells within the United States, or imports into the United States, a component of a patented combination or composition, knowing the same to be especially made or adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

An analysis of patent infringement entails two steps: (1) determining the meaning and scope of the patent claims asserted to be infringed; and (2) comparing the properly construed claims to the device accused of infringing. Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd.*, 116 S.Ct. 1384 (1996). The first step, determining the meaning and scope of the patent claims, is a question of law for the Court. Id. The second step, comparing the properly construed claims to the device accused of infringing, is a question of fact. Electro Medical Systems, S.A. v. Cooper Life Sciences, Inc., 34 F.3d 1048, 1053 (Fed. Cir. 1994).

It is the claims of the patent which provide the concise formal definition of the invention, and the words of the claim must be "read on" the accused structure to determine whether each of the limitations recited in the claim is present in the accused structure. Corning Glass Works v. Sumitomo Electric USA Inc., 868 F.2d 1251, 1259 (Fed. Cir. 1989); Autogiro Co. of America v. United States, 384 F.2d 391 (Ct. Cl. 1967). Every element or limitation of a claim, or its equivalent, must be present in order for an accused device to literally infringe the asserted claim. Conroy v. Reebok International, Ltd., 14 F.3d 1570, 1573 (Fed. Cir. 1994).

An injunction may be issued to enjoin a contributory infringer. Pac-Tec Inc. v. Amerace Corp., 903 F.2d 796, 802 (Fed. Cir. 1990). It is not necessary to join direct infringers in an action against contributory infringers. Dana Corp. v. American Precision Co., 827 F.2d 755 (Fed.

5

Cir. 1987). Direct evidence of direct infringement is not required; circumstantial evidence will suffice. Moleculon Devices, Inc. v. CBS, Inc., 793 F.2d 1261 (Fed. Cir. 1986). In fact, direct infringement can be inferred from evidence that an accused component has no practical use other than in an infringing product. Preemption Devices, Inc. v. Minnesota Mining & Manufacturing Co., 803 F.2d 1170 (Fed. Cir. 1986). Knowledge that the combination for which the component was especially made was patented and infringing can be inferred from the fact that the alleged contributory infringer knew that the only market for the component was for use in an infringing product. Id.

Thus, if Nutrition 21 demonstrates that it is likely to succeed in proving that Farmanatural is infringing claims 12 and 13 of the '988 patent, then it has demonstrated that it is likely to succeed on the claim of infringement against Farmanatural.

Except for experimental uses in the field of nutrition, chromium picolinate is not used other than as a nutritional supplement to provide essential metals as described in claim 12 of the '988 patent (de la Harpe, Decl. ¶3). Chromium picolinate is not a staple item of commerce that is made by manufacturers for any substantial uses, other than as nutritional supplements as described in claims 12 and 13 of the '988 patent (de la Harpe Decl. ¶3).

Claim 12 of the '988 patent refers to a "food composition for selectively supplementing an essential metal", including chromium, "in the mammalian diet". A capsule containing a nutritional supplement like chromium picolinate is such a food composition. (de la Harpe Decl. ¶4).

Claim 12 further describes facilitating absorption of chromium by the mammalian system. A human swallowing a nutritional supplement capsule containing chromium picolinate

6

will facilitate absorption of chromium. (de la Harpe Decl. ¶5).

Additionally, claim 12 of the '988 patent refers to an "effective amount" of the metal picolinates. The National Academy of Sciences through its Food and Nutrition Board recommends 50-200 micrograms of chromium per day. Thus, according to the National Academy of Sciences, as little as 50 micrograms of chromium per day is an "effective amount" to supplement a diet (de la Harpe Decl. ¶6).

Claim 12 of the '988 patent also refers to an "exogenously synthesized" essential metal picolinate complex. An exogenously synthesized material is one synthesized outside of the body, as opposed to one synthesized within the body, and is so defined in column 2, lines 37-40 of the '988 patent (de la Harpe Decl. ¶7). There is no known commercially feasible process for extracting chromium picolinate synthesized within the body for subsequent ingestion (de la Harpe Decl. ¶7).

Finally, claim 12 of the '988 patent specifies a generic structural formula for metal picolinates. Columns 3 and 4, examples 1-4 of the '988 patent describe several metal picolinates, including chromium picolinate, as having that structural formula. (de la Harpe Decl. ¶8).

Claim 13 of the '988 patent, a dependent claim, includes all of the foregoing limitations of independent claim 12. Claim 13 further identifies the essential metal picolinate complex described in claim 12 as being chromium picolinate (de la Harpe Decl.¶9).

Thus, nutritional or dietary supplements which include chromium picolinate directly read on, and thereby infringe claim 13 of the '988 patent. Accordingly, the sale by Farmanatural of compositions (i.e., nutritional supplements) containing chromium picolinate constitutes direct

7

infringement of claim 13 of the '988 patent. Similarly, the sale of chromium picolinate by Farmanatural constitutes contributory infringement of claim 13 of the '988 patent. Nutrition 21 has therefore demonstrated that it is likely to succeed on the merits of its claim of patent infringement against Farmanatural.

### 2. Validity of the '988 Patent

Turning to the issue of validity, the '988 patent is valid as a matter of law, because, pursuant to 35 U.S.C. §282, a patent is presumed valid. Kaufman Company Inc. v. Lantech Inc., 807 F.2d 970, 974 (Fed. Cir. 1986). Since this presumption is a procedural device which places the burden on the defendant to raise substantial issues of invalidity or unenforceability, Nutrition 21 is not required to make any further demonstration on these issues unless and until they are raised by the defendant. New England Braiding, 970 F.2d at 882.

Moreover, the ultimate question to be determined by the Court is whether the challenger's evidence of invalidity is sufficiently persuasive that it is likely to overcome the presumption of patent validity. PPG Industries Inc. v. Guardian Industries Corp., 75 F.3d 1558, 1566 (Fed. Cir. 1996); New England Braiding, 970 F.2d at 883. Thus, unless Farmanatural demonstrates otherwise, Nutrition 21 has demonstrated a likelihood of success on the merits on the issue of the validity and enforceability of the '988 patent.

### C. Nutrition 21 Will Suffer Irreparable Harm if an Injunction is not Granted

Because Nutrition 21 has demonstrated a likelihood of success on the issues of infringement and validity, it is entitled to a presumption of irreparable harm if a preliminary injunction were not to issue. Bell & Howell, 132 F.3d at 705; Polymer Techs, 103 F.3d at 973. The presumption derives in part from the finite term of the patent grant, since patent expiration

is not suspended during litigation, and the passage of time can work irreparable harm. Bell & Howell, 132 F.3d at 708, quoting H.H. Robertson v. United Steel Deck Inc., 820 F.2d 384 (Fed. Cir. 1987), *overruled on other grounds*, Markman, 52 F.3d at 977.    Likewise, years after infringement has begun, it may be impossible to restore an exclusive licensee's exclusive position by an award of damages and a permanent injunction. Polymer Technologies, 103 F.3d at 975-76.

Accordingly, as the exclusive licensee under the '988 patent for chromium picolinate, Nutrition 21 will suffer irreparable harm from Farmanatural's continuing infringement. This factor therefore weighs strongly in favor of granting a preliminary injunction.

### D.    Balance of Hardships Weighs in Favor Nutrition 21

As evidenced by the foregoing discussion on the issue of irreparable harm, Nutrition 21 will suffer significant harm from the denial of a preliminary injunction, since Nutrition 21's exclusive right to sell chromium picolinate is destroyed by those who illegally sell chromium picolinate or by those who illegally purchase it from sources other than Nutrition 21 or its authorized licensees, and then sell compositions containing chromium picolinate. Farmanatural, on the other hand, would not be significantly injured by the granting of a preliminary injunction, since the elimination of one unauthorized product from its complete line would not cause it any significant injury. Thus, the balance of hardships weighs in favor of Nutrition 21.

### E.    The Public Interest Weighs in Favor of Granting an Injunction

There is a strong public policy favoring the enforcement of patent rights. This weighs strongly in Nutrition 21's favor. PPG Industries, 75 F.3d at 1567. Conversely, there is no public interest weighing in defendant's favor. Thus, for this reason as well, Nutrition 21's motion for a

preliminary injunction should be granted.

## IV. CONCLUSION

For the foregoing reasons, the motion for a preliminary injunction should be granted.

Dated: Boca Raton, Florida
       January 7, 2000

George G. Kurschner (Fla. Bar No. 238619)
370 W. Camino Gardens Blvd.
Boca Raton, Florida 33434
(561) 395-5195

and

HELFGOTT & KARAS, P.C.
Aaron B. Karas
Michael F. Sarney
350 Fifth Avenue
New York, New York 10118
Phone: (212) 643-5000

Attorneys for Plaintiff

**Exhibit A**